IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LITTLE ROCK REED,
a/k/a Timothy Reed,

        Plaintiff,

vs.                                                                                                    No. CIV 98-128 LFG/RLP

STATE OF NEW MEXICO, et. al,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

THIS MATTER came before the Court on Defendants' City of Albuquerque and Michael Sisneros Motion for Summary Judgment [Doc. 61]. Defendants seek summary dismissal of Plaintiff's claims brought under 42 U.S.C. §§ 1983, 1985 and 1986, together with dismissal of Plaintiff's claims brought under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 *et. seq.*

### Nature of Lawsuit

This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and action for damages brought under the New Mexico Tort Claims Act. The claims arise following Plaintiff, Timothy "Little Rock" Reed's ("Reed") arrest and incarceration on a fugitive warrant following an earlier court proceeding that successfully challenged his arrest on the same warrant. Reed was arrested in Albuquerque, New Mexico on November 17, 1996, and held at the Bernalillo County Detention Center ("BCDC") until his release on December 16, 1996, a period of thirty days. This lawsuit challenges the validity of his arrest and the legality of his subsequent incarceration.

**Summary Judgment Standards**

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598 (1970); *Quaker State Minit-Lube, Inc.,* v. *Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment must shoulder the initial burden of establishing the absence of a question of fact. *Adickes*, 398 U.S. at 144. That burden is carried when the moving party demonstrates that the undisputed facts entitle the moving party to judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). That initial burden can be shouldered when the moving party demonstrates by way of admissible evidence, that is, by deposition, answers to interrogatories, admissions, affidavits or documentary evidence that the undisputed facts entitle the moving party to judgment. *Id.*.

A party opposing summary judgment must do more than rely on its pleadings or mere argument or contention of counsel to defeat a *prima facie* showing of entitlement to judgment. Federal law provides that the party opposing the motion for summary judgment must affirmatively come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Id*. at 324. "Hearsay testimony cannot be considered because `[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1540 (10th Cir. 1995)(quoting *Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995)). This requirement is made clear in the rule itself:

> An adverse party may not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate will be entered against the adverse party.

Fed. R. Civ. P. 56. Thus, the burden on the party opposing a motion for summary judgment is significantly greater when the moving party successfully makes a *prima facie* showing of entitlement to judgement. The test is not whether the party opposing the motion will be able to demonstrate a factual dispute at trial, but, rather, whether, in response to the motion, that party can demonstrate the presence of a material, factual dispute. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is `genuine', an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawnmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997). The Court will consider the motions in light of the above standards.

### Defendant City of Albuquerque and Defendant Sisneros' Motion for Summary Judgment

Defendant Michael Sisneros ("Sisneros") and the City of Albuquerque ("City") move the Court for summary judgment on Reed's first (intentional) and third (civil rights) claims for relief. The parties have stipulated to dismissal of Reed's Section 1983 claims against the City and against Sisneros in his official capacity.

In support of their motion for summary judgment, Sisneros and the City submitted a statement of undisputed material facts. The Court accepts as true all undisputed material facts. Those facts are:

1. On January 30, 1998, Reed filed his complaint (hereinafter referred to as "Plaintiff's Complaint.") for damages for violations of civil rights and for other causes of action arising from

3

unlawful detention. (Plaintiff's Complaint).

2. In Plaintiff's Complaint, he asserts five separate claims for relief against the Defendants: First Claim for Relief (intentional tort); Second Claim for Relief (negligence/*res Ipsa loquitur*); Third Claim for Relief (civil rights), Fourth Claim for Relief (*prima facie* tort), and Fifth Claims for Relief (intentional and negligent infliction of emotional distress). (Plaintiff's Compliant).

3. On August 27, 1998, this Court entered its Memorandum Opinion and Order dismissing Reed's Second, Fourth and Fifth Claims for Relief.

4. Reed seeks compensatory and punitive damages for his thirty-one day incarceration at the Bernalillo County Detention Center. (Plaintiff's Complaint).

5. On or about November 16, 1996, Reed was involved in an automobile accident. (Plaintiff's Complaint, ¶ 17).

6. Albuquerque Police Department Officers responded to the accident. (Plaintiff's Complaint, ¶ 18).

7. In investigating the accident, officers ran a check on Reed and determined that he had an outstanding warrant from Ohio for alleged parole violation. (Plaintiff's Complaint, ¶ 18).

8. The officers arrested Reed and transported him to the Bernalillo County Detention Center ("BDCD"), where he was booked and held. (Plaintiff's Complaint, ¶¶ 18, 19).

9. Reed remained in BCDC from November 16, 1996 to December 16, 1996, a total of thirty-one days. (Plaintiff's Complaint, ¶ 21).

10. Upon entering BCDC, Reed was allowed to make one telephone call. He called attorney Richard Weiner ("Weiner"). (Plaintiff's Complaint, ¶ 23).

11. Weiner appeared at the detention center within two hours. (Plaintiff's Complaint, ¶ 23).

12. Weiner presented to BCDC representatives a Release Order and Decision signed by New Mexico Judge Peggy J. Nelson, District Judge, Division I, Eighth Judicial District Court and filed January 20. 1995 in the case styled as *Timothy "Little Rock" Reed, Petitioner, vs. Manuel Ortiz, Director, Taos County Adult Detention Center, Respondent*, Eighth Judicial District Court, Cause No. 94-1 CR Misc, a habeas corpus petition wherein Reed sought his release from the Taos County Adult Detention Center. (Plaintiff's Complaint, ¶ 24; and copy of Judge Nelson's Release Order and Decision).

13. In Judge Nelson's decision, she ordered, "that petitioner [Reed] be released immediately from the Taos County Detention Center." (Judge Nelson's Decision, p. 17, Ex. A).

14. The State of New Mexico appealed Judge's Nelson's Decision and Order to the New Mexico Supreme Court. (Dep. Tupler, pgs. 9, 41-42, Ex. B).

15. Tupler, an Assistant Attorney General for the State of New Mexico, handled the appeal to the New Mexico Supreme Court on behalf of the State. (Dep. Tupler, p. 44, Ex. B).

16. Hermann, a Public Defender in the appellate division, represented Reed on the appeal to the New Mexico Supreme Court. (Dep. Reed, P. 28, Ex. C).

17. Within two (2) days of being arrested in Bernalillo County and taken to BCDC, Reed was in contact with Hermann. (Dep. Reed, p. 29, Ex. C).

18. On or about November 18, 1996, Hermann wrote a letter to Marquez at the Bernalillo County District Attorney's Office. In the letter, Hermann states, "no action can be taken by the state at this time on the Ohio warrant because of Judge Nelson's order and because the district court lacks jurisdiction over the case." (Letter from Hermann to Marquez, dated November 18, 1996, Ex. D).

19. On or about November 22, 1996, Hermann wrote a letter to Maj. Gutierrez and Sgt. Bell

at BCDC, wherein Hermann states that, "[T]imothy Reed . . . is not to be released to authorities from Ohio under any circumstances." Further along, in the letter, Hermann writes:

> A new petition for writ of habeas corpus was filed in the New Mexico Supreme Court on Wednesday, Nov. 20, 1996. The Court has set a hearing for Dec. 4, 1996. Assistant Attorney General Anthony Tupler, who is in charge of this case, has agreed with me that no proceedings will be initiated to return Mr. Reed to Ohio pending resolution of the current petition before the Supreme Court. See: Letter dated November 22, 1996 from Sue Hermann to Joe Gutierrez and Sgt. Will Bell, Ex. E.

20. Tupler agreed with Hermann not to do anything regarding Reed in order to afford Hermann time to file some type of pleading and that he would advise the Bernalillo County District Attorney's office of the agreement. (Dep. Tupler pp. 133-134, Ex. B).

21. On or about December 11, 1996, the New Mexico Supreme Court heard oral arguments on the petition filed by Hermann. (Dep. Tupler, p. 142, Ex. B).

22. On or about December 11, 1996, the New Mexico Supreme Court entered its order granting Reed a stay of any proceeding to transfer him to Ohio's custody. (Dep. Tupler, p. 179, Ex. B).

23. On December 13, 1996, through his counsel Ray Twohig, Reed filed a Motion to Release from Custody or Establish Conditions of Release in the Second Judicial District Court for Bernalillo County. (*See* Motion to Release From Custody or Establish Conditions for Release, Ex. F).

24. On December 16, 1996, Reed appeared before Judge Murdoch who entered an order releasing Reed from custody. (*See* Order Setting Conditions of Release, Ex. G).

25. On December 16, 1996, Reed was released from custody of the Bernalillo County Detention Center. (Plaintiff's Complaint, ¶ 31).

26. While Reed was incarcerated at BCDC, he was able to:

(a) contact numerous attorneys, including Richard Weiner, Sue Hermann, Peter Cubra, Sue Morrison and Ray Twohig. (Dep. Reed, pp. 27, 28, 30, 31 and 185-186, Ex. C),

(b) talk with news reporters. (Dep. Reed. pp. 38, 39, 44, Ex. C),

(c) ask Hermann if she could file something in the New Mexico Supreme Court to stay having Ohio come and pick him up. (Dep. Reed, p. 142, Ex. C),

(d) have access to the law library. (Dep. Reed. p. 223, Ex. C),

(e) pray every day with a Native American spiritual leader in his cellblock. (Dep. Reed, p. 82, Ex. C).

27. In his complaint, Reed alleges that during the course of his confinement, he was:

(a) denied the opportunity to participate in the burial ceremonies required in accordance with his Native American religious beliefs. (Plaintiff's Complaint, ¶ 31),

(b) denied the opportunity to freely practice his religion. (Plaintiff's Complaint, ¶ 32),

(c) denied access to the media and the media was denied access to him. (Plaintiff's Complaint, ¶32),

(d) detained in solitary confinement for significant amounts of time. (Plaintiff's Complaint, ¶33).

28. Reed professes to be a Native American and racial minority. (Plaintiff's Complaint, ¶ 4).

29. Reed is not an enrolled member of a Native American tribe. (Dep. Reed, pgs. 57, 58, 123, Ex. C).

30. Reed withdrew the allegation that Defendant Sisneros was acting or failing to act because of Reed's status as a Native American. (Dep. Reed, p. 84, Ex. D).

31. For two (2) weeks during Reed's incarceration, the BCDC pod in which he was housed was in a "lock down" due to a fight between two prisoners. One of the prisoners was stabbed. (Dep. Reed, pp. 25, 35, 158-160. Ex. C).

32. Reed was in a cell by himself during the lockdown. (Dep. Reed, p. 158, Ex. C).

33. Reed described himself as having a good working knowledge of the extradition laws, said he understood the process, and thought he was capable of representing himself. (Dep. Reed, pgs. 141, 217, Ex. C).

34. Sisneros, at all material times herein, was the Director of the Bernalillo County Detention Center. (Plaintiff's Complaint, ¶8).

35. The City operates and maintains BCDC. (Plaintiff's Complaint, ¶ 9).

36. Reed alleges that the acts of Sisneros and the City violated his rights and are liable under New Mexico Tort Claims Act and 42 U.S.C. §§ 1983, 1985 and 1986.

**Reed's Claimed Disputed Facts**

Reed takes issue with Defendants' undisputed facts Nos. 7, 20 and 26.[1] Reed's challenge to No. 7, is no more than counsel's argument or contention and cannot be considered as evidence.

---

[1] Those proposed undisputed facts are as follows:
7. In investigating the accident, officers ran a check on Reed and determined that he had an outstanding warrant from Ohio for alleged parole violation.
20. Tupler agreed with Hermann not to do anything regarding Reed in order to afford Hermann time to file some sort of pleading and that he would advise the Bernalillo County District Attorney's Office of the agreement.
26. While Reed was incarcerated at BCDC, he was able to:
    A. contact numerous attorneys, including Richard Weiner, Sue Hermann, Peter Cubra, Sue Morrison, and Ray Twohig;
    B. talk with news reporters;
    C. ask Hermann if she could file something in the New Mexico Supreme Court to stay having Ohio come to pick him up.
    D. have access to the law library; and
    E. pray every day with a Native American spiritual leader in his cell block.

Reed's challenge to No. 20 is of no consequence to the instant motion, as it is not a material fact germane to the issues at hand. Finally, Reed does not deny or controvert the facts contained in No. 26. Instead, he proffers further clarification and elaboration. This is not enough to turn the fact into a disputed material fact. Accordingly, the Court considers as true, the Defendants' statement of facts set forth above. D.N.M. LR. Civ. 56.1(b).

## Reed's Claims Against Sisneros

The Court will first address Reed's remaining Section 1983 claim against Sisneros in his individual capacity. Reed argues that Sisneros, Director of BCDC, received at least one letter from him and that he failed to act upon the letter requesting his release.

It is undisputed that Sisneros received a letter from Reed challenging the lawfulness of his detention and requesting that he be brought immediately to court. Sisneros read the letter and construed it as an inmate request. As such, he forwarded it to Major Gutierrez, who handled prisoner requests as part of his job duties.

The law is clear that "individual liability under Section 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). In addition, the law is well settled that liability under Section 1983 cannot rest upon a theory of respondeat superior. *See., e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989). Reed must allege facts to show Sisneros's respective participation or acquiescence in the offensive behavior, or demonstrate by factual averments an affirmative link between the incident of purported misconduct and the adoption of a plan or policy showing authorization or approval of the misconduct. *See, e.g.*, *Meade v. Grubbs*, 841 F.2d 1512, 1527-29 (10th Cir. 1988).

Supervisors who have neither acquiesced nor participated in constitutionally proscribed misconduct cannot be held liable for the acts of their subordinates. *See, e.g.*, *McClelland v. Facteau*, 610 F.2d 693, 696 (10th Cir. 1979). Reed has failed to allege facts which, if proved, would affirmatively link Sisneros to the claimed constitutional violation. Reed alleges no personal involvement, but only that he was aware by virtue of his position as jail Director of Reed's letter and that is why the letter was sent to his attention. Mere knowledge of an alleged constitutional violation, even by a supervisor, will not support Section 1983 liability. *See Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993). Sisneros' decision to forward the letter to the person who handles prisoner requests does not rise to the level of deliberate indifference.

An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997).

The Court concludes that there is no genuine issue as to any material fact that Sisneros acted with deliberate indifference, and, accordingly, as a matter of law, Reed's Section 1983 claims against Sisneros in his individual capacity must be dismissed.

### Reed's Claims Against BCDC, Gutierrez and Sherman[2]

Turning to Reed's remaining claims against BCDC and Defendants Gutierrez and Sherman, Reed alleges that his rights were violated by virtue of his unlawful detention at BCDC because BCDC representatives were aware of and in possession of Judge's Nelson's order and release and, consequently, should have released him.

---

[2] By prior order, the Court granted Reed's motion to amend his complaint to add additional defendants [Doc. 93]. The Court construes the present motion as having been brought by all BCDC Defendants, including the Defendants in the amended complaint.

In response, Defendants argue that Reed falls short of stating a claim cognizable under Section 1983 or the New Mexico Tort Claims Act. Defendants submit that Reed's detention was not unlawful. He was brought to the facility, following an arrest by a police officer, on a NCIC "hit" indicating an outstanding arrest warrant and that without a valid release order that is specifically directed at jail administrators for BCDC and from a judge in the Second Judicial District, he could not have been released.

New Mexico law prohibits the release of a prisoner in the absence of an order. Defendants cite to Section 33-3-12 NMSA 1978, which states in pertinent part:

> A. Every public officer who has power to order the imprisonment of any person for violation of law shall, on making such order, transmit to the sheriff, jail administrator or independent contractor of his respective county, a true copy of the order so that the person imprisoned may be considered under his custody until expiration of the commitment or until further steps, as provided by law, are taken to obtain the prisoner's liberty, or which he shall in due time, notify the sheriff, jail administrator or independent contractor in writing.

NMSA. 1978, § 33-3-12(A).

Moreover, a jail administrator who deliberately releases a prisoner without a proper order of release is guilty of a misdemeanor and can be removed from office. NMSA 1978, § 33-3-12(b), states: "B. Any jailor who deliberately and knowingly releases a prisoner without an order of release as provided in this section, except upon expiration of the prisoner's term of commitment, is guilty of a misdemeanor and shall be removed from office."

Here, Defendants argue that Judge Nelson's Order of Release was not a valid order for their purposes, since Judge Nelson's order directed the Taos County Jail to release Reed, and BCDC was not a named party. Reed was detained at a facility located outside the Eighth Judicial District and

the custodian of the facility was not the same custodian as in the Taos facility. The Defendants further argue that Reed was arrested based on a NCIC hit, which indicated that there was an outstanding arrest warrant, and he was brought to BCDC because of the outstanding arrest warrant. Defendants arguments are well-taken.

Reed misapprehended the effectiveness of Judge Nelson's order. First, the order was good as to the named parties. Judge Nelson directed her order to the detention facility in the Eighth Judicial District in Taos, not to the Second Judicial District detention facility in Albuquerque. Moreover, Judge Nelson's order did not and could not erase the Ohio arrest warrant which remained valid. The warrant was issued in Ohio. Neither the State of Ohio nor any of its officers were parties in the litigation before Judge Nelson, and Judge Nelson was without jurisdiction to enter an extra territorial order. Article 3, Sec. 13 of the New Mexico Constitution; 20 Am. Jur. 2d, Courts, 5153, p. 499. The Albuquerque Police arrested Reed based on the NCIC information.

NCIC is the National Crime Information Center computer system. Information entered includes the accused's name, date of birth, tatoos, fingerprints, aliases, sex and race. The NCIC information is available to all federal and state law enforcement agencies nationwide. If an individual whose name is entered into the NCIC data base is later arrested and correct identification is provided, a match or "hit' will occur when the arresting agency enters his name into the system. The match informs the arresting agency that the individual is wanted on charges elsewhere and who wants him. *United States v. Walker*, 92 F.3d 714, 715-716 (8th Cir. 1996). In addition, "[I]nformation received from NCIC computer has been routinely accepted in establishing probable cause for a valid arrest." *United States v. Hines*, 564 F.2d 925 (10th Cir. 1978).

Judge's Nelson's Order of Release did not make Ohio's outstanding arrest warrant disappear. Reed would impose a burden on the detention center to investigate every detainee's contention that he should be released. The Supreme Court rejected this argument in *Baker v. McCollan*, 443 U.S. 115, 99 S. Ct. 2695 (1979). There, the Court held that "the Constitution does not guarantee that only guilty will be arrested, police and correction employees may rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistaken identity or otherwise."

In *Roa v. City of Bethlehem, PA*, 782 F. Supp. 1008 (E. D. Pa. 1991), a pretrial detainee brought a Section 1983 and state tort claims action, alleging that he had been erroneously arrested and held for thirty days as a result of mistaken identity. He alleged that the administrative assistant at the county prison failed to take more decisive action to aid him during this extradition. The court rejected plaintiff's contention and observed, "Even if Pagni had positive proof that plaintiff's claim was accurate, he had no authority to release him from custody. At most, he could have contacted court officials to alert of the error. He could not have released him without a court order." *See also Duffy v. County of Bucks*, 7 F. Supp. 2nd 567, 577 (E.D. Pa. 1998)(no procedural due process violation because "the correctional officers had no authority to disregard the bench warrant and release [defendant] because it is up to the judicial system to decide whether a person is guilty or not."). Likewise, Defendants could not release Reed without a valid court order. Reed was pursuing this matter with the assistance of counsel and the matter was pending before the judiciary.

In conclusion, the burden was not on Defendants to examine the legality of Reed's detention, nor was it their burden to pursue a legal challenge on his behalf. Here, Reed was arrested on an NCIC hit, there was a booking slip and a faxed request from the demanding state seeking his return.

The Defendants were without authority to release him and to do otherwise would have been contrary to law. Reed's Section 1983 claims against Gutierrez and Sherman should be dismissed.

## State Tort Claims

Reed brings a claim for false imprisonment under the New Mexico Tort Claim's Act, NMSA 1978, § 41-4-1, *et seq*. The Tort Claims Act shields governmental entities and public employees from tort liability unless immunity has been waived. Reed alleges that immunity has been waived pursuant to NMSA 1978, § 41-4-12, and, therefore, he may bring a claim for false imprisonment. To establish his claim, Reed must show that: (1) Defendants intentionally confined or restrained him without his consent; and (2) that Defendants knew that they had no lawful authority to do so. *Diaz v. Lockheed Electronics*, 95 N.M. 28, 618 P.2d 372 (1980).

The record shows that Reed was brought by APD officers to BCDC based on an NCIC hit. He was booked and held on a outstanding Ohio arrest warrant. As discussed above, it is not the function of the detaining facility to conduct an investigation into the arrests of those detained and to independently verify whether the detainee should be in custody. *See Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995).

Reed cannot satisfy the second element of his claim, to wit, that Defendants knew that they had no lawful authority to detain him. Reed attempts to create a duty that is not supported by law. Accordingly, judgment should be entered in favor of Defendants on this claim.

## Section 1985 and 1986 Claims

Reed also made allegations under 42 U.S.C. §§ 1985 and 1986. To establish a federal conspiracy claim, a plaintiff must show a deprivation of his rights due to membership in a particular class of individuals. "[T]here must be some racial, or perhaps otherwise class based invidious

14

discriminatory animus behind the conspirator's action." *Id.. United Broth. Of Carpenters & Joiners of American, Local 66 AFL-CIO v. Scott*, 463 U.S. 825, 834-835, 103 S. Ct. 3352, 3359 (1983). In the instant action, while Reed descries himself as a Lakota Sioux, the record shows that neither he nor his father are enrolled or engrossed members of the tribe. He has not applied for membership, nor has he submitted any documentation verifying his Native American affiliation. All that has been shown is a reference by Reed's mother that his father was three-quarters Lakota Sioux. Reed needs something more to demonstrate membership in a protected class of individuals.

Likewise, Defendants submit that Reed cannot establish the elements of a Section 1985 claim. "(1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to the person or property or the deprivation of a civil right." *Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999).

Reed, through his response, did not oppose Defendant's request that summary judgment be entered on these claims. The Court views this as consent to the relief being sought and therefore orders dismissal of Reed's Section 1985 and 1986 claims. D.N.M.LR-Civ. 56.1(b).

### Conditions of Confinement

Finally, Reed argues that some aspects of his confinement violated his constitutional and civil rights. In particular, he alleges that, while incarcerated, he was denied the opportunity to participate in burial ceremonies in accord with his Native American religious beliefs, that he was denied access to the media, that he was detained in solitary confinement for significant amounts of time, and that he was denied the opportunity to freely practice his religion.

15

The circuit, in *Craig v. Eberly*, 164 F.3d 490 (10th Cir. 1998), summarized the legal standards for a conditions of confinement claim:

> [J]ail officials [must] provide human conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety. To hold a jailer personally liable for violating an inmate's right to human conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component. The objective component requires that the alleged deprivation by sufficiently serious . . . [J]ail conditions may be restrictive and even harsh without violating constitutional rights. Indeed, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth amendment violation.
>
> The subjective component requires the jail official to have a sufficiently culpable state of mind. In the context of prison-conditions claims, the required state of mind is one of deliberate indifference to inmate health and safety. In other words, the jailer is liable only if he or she knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference cold be drawn that a substantial risk of serious harm exists, and he must also draw the inference. It is not enough to establish that the official should have known of the risk of the harm.

*Id*. at 295-96 (internal quotations and citations omitted).

Applying the above, the Court finds that Reed fails to allege facts demonstrating the subjective component of the claim. With respect to his religion claims, the record shows that Reed was able to practice his Native American religious beliefs daily and prayed with a Native American spiritual leader in his cell block. With regard to his denial of access to the media, the record indicates Reed spoke with newspaper reporters on three occasions. The record also shows numerous contacts with attorneys, such as Richard Weiner, Sue Hermann, Peter Cubra, Sue Morrison and Ray Twohig. He also had access to a law library. The record belies Reed's assertion that he suffered a denial of rights

while housed at BCDC. There is a difference between a denial of a right and a disagreement over the quantity and quality of such visits. *Rhem v. Malcolm*, 396 F. Supp. 1195 (S.D. N.Y. 1975), *aff'd* 527 F.2d 1041 (2nd Cir. 1975).

It appears that most of Reed's allegations go to deprivations which occurred for the two-week period he was placed in solitary confinement. It is uncontroverted that Reed was indeed, housed in solitary confinement, as were all prisoners assigned to this unit. This was done to protect the prisoners following a disturbance where one prisoner was stabbed. The actions taken were done, not to deprive Reed his rights, but rather, to protect Reed and others from physical harm. The law is clear that jail officials may take reasonable measures to guarantee an inmate's safety. *Craig v. Eberly*, 164 F.3d 490 (10th Cir. 1998). The Court finds that the allegations do not establish the requisite culpable state of mind to support his conditions of confinement claim.

In conclusion, the Court finds that Defendants' Motions for Summary Judgment are well-taken and should be granted.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Stevan D. Looney, Esq.

ATTORNEYS FOR DEFENDANTS:
Joan M. Waters, Esq.
Jeffrey L. Baker, Esq.